## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TYNAN SMITH, et al.                          :
                                             :
                                             :
     v.                                  :   Civil No. CCB-14-3742
                                             :
                                             :
UNION CARBIDE CORP., et al.                  :
                                             :

### MEMORANDUM

     Tynan Smith suffers from head and neck cancer, asbestosis, and non-malignant pleural

changes.  He and his spouse, Mary Ellen Smith (together, "Smith"), sue the Wayne

Manufacturing Corporation ("Wayne"), the Lofton Corporation ("Lofton"), and several other

firms, alleging under a host of state law theories that those businesses are responsible for

exposing him to the asbestos that allegedly caused his afflictions.  Wayne and Lofton removed

his case from the Circuit Court of Baltimore City, asserting this court's federal officer

jurisdiction under 28 U.S.C. § 1442(a)(1) on the basis of the federal contractor defense.  Smith

now moves to remand, contesting this court's jurisdiction.  That motion has been fully briefed,

and the parties argued it at a hearing on April 21, 2015. (*See* ECF No. 31.)  For the reasons

explained below, it will be denied.

### BACKGROUND

     In January 2014, Smith was diagnosed with head and neck cancer, along with fibrosis and

pleural plaques.  (*See* Mot. Remand Ex. 3, Short-Form Compl. Attach. ¶ 1, ECF No. 4-3.)  He

filed in the Circuit Court for Baltimore City a short-form complaint that incorporates by

reference certain select paragraphs of the Other Asbestos Cases Amended Master Complaint,

which has been on file with that court since mid-1990.  (*See id.*)  Specifically, he alleges theories

of strict liability on the basis both of defective design and failure to warn, breach of warranty,

negligence, fraud, conspiracy, market share liability, and, alongside his spouse, loss of

consortium.  (*See id.* at. ¶¶ 1–7.)  His complaint names, among many other defendants, Wayne

and Lofton as Wayne's successor in interest.  (*See id.*)  Smith removed the case from the court's

inactive docket.  (*See* Mem. Supp. Mot. Remand Ex. 3, Request for Removal from Inactive

Docket, ECF No. 7-3.)  In late October 2014, he served Wayne and Lofton.  (*See* Notice of

Removal ¶ 2, ECF No. 1; Notice of Removal Exs. 1–2, ECF No. 1.)  They filed their notice of

removal in early December.

Smith's complaint is short on facts specific to him.  A brief attachment indicates the

nature of his current medical condition and date of diagnosis.  (*See* Short-Form Compl. Attach.)

Otherwise, the complaint advances only very general claims by reference to the Master

Complaint.  It indicates, for example, that "Plaintiff was employed in the building and

construction industry as a skilled building tradesman and was required to work with and around

asbestos products which were manufactured and/or supplied by each of the Defendants."  (Short-

Form Comp. ¶ 1; Master Compl. ¶ 3.)  But it fails to specify either the nature of his occupational

responsibilities or the precise circumstances surrounding his exposure to asbestos.  A doctor's

report attached to the complaint provides the most specific such details.  It states that Smith had

"worked at the Bethlehem Steel Sparrows Point Steel mill in Baltimore, Maryland, from 1960

until 1963, as a pipefitter with asbestos exposure.  He subsequently worked for the U.S. Coast

Guard Shipyard from 1964 until 1974, as a pipefitter, again with asbestos exposure."  (*See* Mem.

Supp. Mot. Remand Ex. 3, Second Short Form Compl., Eliasson Report 1, ECF No. 7-3.)

Wayne and Lofton removed this case on the assumption that Smith's claims against them are premised, at least in part, on "the alleged assembling of asbestos containing Marinite-Micarta bulkhead panels allegedly used in the construction of vessels at the USCG Yard, while . . . Smith allegedly was employed as a pipefitter" there between 1964 and 1974. (Opp. Mot. Remand 3, ECF No. 7.) On the ground that they supplied those panels pursuant to government specifications, they assert the federal contractor defense as a basis for federal jurisdiction. At the hearing on this motion, Smith conceded that Smith and Lofton correctly surmised the basis for his claims against them.

Wayne and Lofton allege, with reference to certain exhibits, that in the 1960s Wayne operated a manufacturing facility in Virginia that primarily produced custom metal furnishings for ships. (*See* Opp. Mot. Remand Ex. 3, Baker Dep. 65:24–66:8, 11/18/92, ECF No. 7-4.) Hopeman Brothers, Inc. ("Hopeman")—which is *not* named in Smith's complaint and which no party has yet sought to join—purchased most of the plant's output in the late 1960s. (*See id.* at 66:14–23.) When Hopeman ordered marinite-micarta paneling containing asbestos, it would ship those materials to Wayne and then "requested Wayne to laminate with a glue the Micarta to the Marinite." (*Id.* at 80.)[1] The defendants append to their opposition to remand many purchase orders, which demonstrate that the Coast Guard regularly ordered Marinite-Micarta panels from Hopeman for shipment to the Coast Guard shipyard at Curtis Bay. (*See* Notice of Removal Ex. 4, ECF No. 1.) They also append an affidavit from Norman Lemley, a retired Coast Guard captain with "knowledge regarding regulations and specifications of marine materials used aboard U.S. Coast Guard and commercial vessels." (Opp. Mot Remand Ex. 7, Lemley Aff. ¶ 5,

---

[1] The defendants assume Smith worked at the Coast Guard shipyard at Curtis Bay, but their description of Wayne's processes refers to Hopeman's orders for products destined for a different shipyard in a different part of the country. The defendants nonetheless allege that that this lamination process "describes the general procedure at Wayne." (Opp. Mot. Remand 4.)

ECF No. 7-8.)   He explains that "[s]hipbuilding specifications for the 50-80's for USCG Cutters referenced USN shipbuilding mils specs," including those calling for "asbestos composition panels" made of marinate for bulkheads.  (*Id.* at ¶ 22; *see also id.* at ¶¶ 19–21.)

Lofton incorporated in 1982.  (*See* Baker Dep. 19:3–4.)  Although Smith's complaint describes Lofton as Wayne's successor-in-interest, the basis for that assertion is unclear.

## ANALYSIS

Under 28 U.S.C. § 1442(a)(1), a civil defendant may remove a case to federal court where the removing defendant (1) is a federal officer or person who "acted under" the direction of a federal officer, (2) raises a colorable federal defense, and (3) demonstrates a causal nexus between the plaintiff's claims and the conduct performed under color of federal law.  *See, e.g.*, *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010).  Such a defendant may remove the case without the consent of its codefendants.  *See Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 (D. Md. 2014).  The statute is "broadly construed" to permit removal.  *Kolibash v. Comm. on Legal Ethics of the W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989).  A defendant seeking removal is held to no higher pleading standard "than the one imposed on a plaintiff in drafting an initial complaint," *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008), which requires only allegations sufficient to "advance the plaintiff's claims 'across the line from conceivable to plausible,'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The defendants satisfy each of these requirements by invoking their federal contractor defense.  Where, as here, a defendant removes a suit under § 1442(a)(1) on the basis of the federal contractor defense, satisfaction of that statute's "acting under" and causal nexus

requirements is often redundant of its "colorable defense" requirement. *See, e.g.*, *Hagen*, 739 F.

Supp. 2d at 785. Accordingly, the court will assess the colorability of the defendants' federal

contractor defense before evaluating their satisfaction of the statute's remaining requirements.

## I. Colorable Federal Defense

As noted, Wayne and Lofton premise removal on their invocation of the federal

contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

Under that doctrine, "[l]iability for design defects in military equipment cannot be imposed,

pursuant to state law, when (1) the United States approved reasonably precise specifications; (2)

the equipment conformed to those specifications; and (3) the supplier warned the United States

about the dangers in the use of the equipment that were known to the supplier but not to the

United States." *Id.* at 512.[2]

Smith concedes that his claims against Wayne and Lofton are predicated on his exposure

to marinite-micarta panels those entities allegedly assembled for shipment to the Coast Guard

yard at Curtis Bay. The Hopeman purchase orders indicate that those panels were directly

purchased by Coast Guard officials for shipment to Curtis Bay. According to Lemley, such

purchases were pursuant to specific specifications calling for asbestos in bulkhead paneling.

And Wayne and Lofton allegedly assembled those materials on Hopeman's behalf.[3] Those

allegations make it plausible that Smith and Lofton will be able to establish that they supplied

---

[2] To invoke that defense against a failure-to-warn product liability claim, a defendant must show "(1) the government exercised its discretion and approved certain warnings for the products; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government." *Citrano*, 1 F. Supp. 3d at 467 (internal quotation marks and citation omitted).

[3] The parties do not dispute whether the subcontractor to a federal contractor may invoke the federal contractor defense. Authority on that question is split. *See, e.g.*, *Badilla v. Nat'l Air Cargo, Inc.*, Civ. No. 12-1066A, 2013 WL 5723324, at *9 (W.D.N.Y. Oct. 21, 2013) (collecting cases). The Fourth Circuit, however, has applied that defense to a subcontractor, albeit without expressly explaining why. *See Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 947, 951 (4th Cir. 1989).

equipment conforming to the Coast Guard's reasonably precise specifications.

As to the third element of the defense, defendants need not establish that they warned the government of known dangers where the government's knowledge of those dangers was "at least equivalent" to that of the defendants. *See, e.g.*, *Citrano*, 1 F. Supp. 3d at 469. Wayne and Lofton invoke that rule, arguing that they had no call to warn the Coast Guard of the health hazards posed by asbestos because the Coast Guard had greater knowledge than they did of those dangers. For support, however, they point not to information known to the Coast Guard, but instead to knowledge held by separate federal agencies. Specifically, they emphasize a pamphlet entitled "Minimum Requirements for Safety and Industrial Health in Contract Shipyards," published by the U.S. Navy and U.S. Maritime Commission in 1943. (*See* Notice of Removal Ex. 4, *Hubbard* Opp. Mot. Remand Ex. 6, ECF No. 1.) And they emphasize that some of the Hopeman purchase orders were submitted in 1972, after the publication of asbestos exposure regulations promulgated on April 27, 1971, by the Occupational Safety and Health Administration ("OSHA") under the Occupational Safety and Health Act of 1972. (*See* Surreply Mot. for Remand 4 (citing National Consensus Standards and Established Federal Standards, 36 Fed. Reg. 10,466, 10,506 (later codified at 29 C.F.R. § 1910.93(a)) (Apr. 27, 1971))).[4]

At the motions hearing, the court requested supplemental briefing on the propriety of imputing the knowledge of one federal agency to another for the purposes of the federal contractor defense. In their letter briefs, both parties rely on the standard described in *In re "Agent Orange" Product Liability Litigation*, 597 F. Supp. 740 (E.D.N.Y. 1985), a case that predated but largely anticipated the Supreme Court's endorsement of the government contractor

---

[4] The defendants have moved for leave to file a surreply. Smith does not oppose that motion, which will accordingly be granted.

defense in *Boyle*.  Drawing on the law of agency, *Agent Orange* explained that

> the knowledge of employees of one [government] agency may be imputed to
> those of another if there is some relationship between the agencies—either some
> reason for the agency without knowledge to seek the information or a reason for
> the knowledgeable agency to transmit the information.  Some relationship is
> required: "a truly independent federal agency should not be charged with
> knowledge of what another is doing simply because both are components of the
> same federal government."

597 F. Supp. at 796 (internal citations omitted) (quoting *J.A. Jones Constr. Co. v. United States*,

390 F.2d 886, 891(Ct. Cl. 1968)).  That case concluded that widespread knowledge of the

dangers posed by a particularly hazardous substance made it "not unlikely" that private

defendants supplying the government with that substance could make out their government

contractor defense.  *See id.* at 799.  By contrast, where two agencies "have clearly delineated

duties" over different activities "there is no basis for" imputing information from one agency to

the other.  *Wyler v. Korean Air Lines Co., Ltd.*, 928 F.2d 1167, 1172 (D.C. Cir. 1991) (refusing

to impute the Air Force's knowledge of a civilian aircraft's course deviation to the Federal

Aviation Administration, despite their shared interest in aeronautical matters).

     Smith and Lofton do not allege any facts pertinent to the relationship between the Coast

Guard and the U.S. Navy or U.S. Maritime Commission, let alone facts sufficient to impute those

independent entities' knowledge of the hazards of asbestos to the Coast Guard.[5]  Accordingly,

their invocation of "Minimum Requirements for Safety and Industrial Health in Contract

Shipyards" does not alone make it plausible that the Coast Guard's knowledge of the dangers

---

[5] Their failure to allege any such facts may well be an oversight.  At the motions hearing on this matter,
counsel for the defendants mistakenly stated that the "Minimum Requirements" pamphlet had been published by the
Coast Guard.  Nothing in the pamphlet, however, supports that representation.  At a later stage in the proceedings,
the defendants might well clarify the basis for their assertion that the Coast Guard possessed greater knowledge of
the dangers of asbestos than they did.

posed by asbestos was superior to their own.[6]

Instead, the defendants seek to impute to the Coast Guard OSHA's knowledge of those dangers, as recognized by OSHA's promulgation of asbestos regulations in early 1971.  Indeed, the Coast Guard had a statutory duty to attempt "to establish and maintain an effective and comprehensive occupational safety and health program which is consistent with the standards promulgated under section 655 of" Title 29 of the U.S. Code.  29 U.S.C. § 668(a).  To honor that obligation, then, the Coast Guard had good reason to seek out information about any safety hazards addressed in OSHA regulations issued under that section.  Knowledge of that regulation—and, with it, knowledge of the health hazards of asbestos that the regulation represents—can be imputed to the Coast Guard.  Accordingly, Wayne and Lofton need not prove that they warned the Coast Guard of the dangers posed by asbestos to make out a colorable federal contractor defense as to any asbestos exposures that occurred after OSHA promulgated a regulation referring to asbestos exposure in 1971.  Because several of the Hopeman purchase orders postdate issuance of that regulation, (*see, e.g.*, Notice of Removal Ex. 1, 5/14/71 Purchase Order), the defendants have stated a colorable federal contractor defense as to at least exposures caused by those purchase orders.

Smith first argues that the defendants' alleged failure to make out a colorable federal

---

[6] This conclusion is not inconsistent with *Sroka v. Union Carbide Corp.*, which remanded to Maryland court a complaint alleging that Wayne, Lofton, Hopeman, and other defendants had failed to warn of the dangers of asbestos a pipefitter who had worked for over thirty years for the Coast Guard at its Curtis Bay yard.  Civil No. WDQ-13-3281, 2015 WL 794942, at *1–*2, *3 n.14 (D. Md. Feb. 24, 2015).  The complaint had been removed on the basis of the federal contractor defense.  Among other defects, however, *Sroka* held that "Minimum Requirements for Safety and Industrial Health in Contract Shipyards" was "insufficient to have discharged [the defendants'] duty under the third prong" of that defense.  *Id.* at *4.  Although *Sroka* remanded that case, the plaintiff's complaint was premised exclusively on the defendants' alleged failure to warn.  Smith's claims here are more extensive.  *See infra* at 8 n.7.

defense to his failure to warn claim precludes jurisdiction.[7]  But even if that were true—which

the court does not decide—it would not preclude jurisdiction.  Where, as here, a complaint

alleges liability premised both on the "mere use of asbestos" and "failure-to-warn claims," then

"the entire case is removable" so long as the defendant makes out a colorable federal-contractor

defense "as to either claim."  *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012).

Notably, however, Wayne and Lofton have *not* plausibly alleged a complete federal

contractor defense against the entirety of Smith's design-defect claim.  At least at this point in

the litigation, they have alleged a defense that runs against only *some* of the alleged asbestos

exposures, not all of them.  As noted, they have only alleged facts sufficient to discharge their

duty to warn the Coast Guard of the dangers posed by asbestos after issuance of the applicable

OSHA regulation.  Some cases have indicated in dicta that federal jurisdiction under 28 U.S.C.

§ 1442(a) requires the defendant to "identif[y] facts which, viewed in the light most favorable to

the defendant, entitle him or her to a *complete* defense."  *Hagen*, 739 F. Supp. 2d at 778

(emphasis added).  But as the Supreme Court long ago observed in affirming the constitutionality

of a predecessor of that statute, it is no "objection that questions are involved which are not all of

a Federal character.  If one of the latter exists, if there be a single such ingredient in the mass, it

is sufficient.  *That element is decisive upon the subject of jurisdiction.*"  *Mesa v. California*, 489

U.S. 121, 129 (1989) (quoting *Mayor & Aldermen of City of Nashville v. Cooper*, 73 U.S. (6

---

[7] At the hearing, Smith asserted that each of his claims is "suffused" with a failure to warn him of the dangers posed by asbestos.  His complaint, however, alleges theories of strict liability on the basis both of defective design and failure to warn, breach of warranty, negligence, fraud, conspiracy, market share liability, and, together with his spouse, loss of consortium.  (*See* Compl. ¶¶ 1–7.)  Although "it is true that a strict liability claim based on failure to warn bears a strong resemblance to a claim of negligence," there are also "some differences" between the theories, including the absence of a contributory negligence defense in the strict liability context.  *Mazda Motor of Am. v. Rogowski*, 659 A.2d 391, 394–95 (Md. Ct. Spec. App. 1995) (internal quotation marks and citation omitted).  And there is still less overlap among Smith's remaining claims and the failure-to-warn theory.  The federal contractor defense applicable to failure-to-warn strict liability claims, for example, is different from the one applicable to other design-defect claims.  *Compare Citrano*, 1 F. Supp. 3d at 467 (failure-to-warn claims), *with Boyle*, 487 U.S. at 512 (design-defect claims).

Wall.) 247, 252 (1867)).  Indeed, those courts that have considered the question hold that a

federal contractor's defense as to certain factual allegations but not others is sufficient to sustain

jurisdiction.  *See Comardelle v. Pa. Gen. Ins. Co.*, Civil No. 13-6555, 2014 WL 1117969, at *2

n.18 (E.D. La. Mar. 18, 2014) (exercising jurisdiction where a defendant asserted a colorable

federal contractor defense as to certain asbestos exposures but not others); *Morgan v. Bill Vann

Co.*, Civil No. 11-0535-WS-B, 2011 WL 6056083, at *7 n.8 (S.D. Ala. Dec. 6, 2011) (same);

*Epperson v. Northrop Grumman Sys. Corp.*, Civil No. 4:05CV2953, 2006 WL 90070, at *3

(E.D. Va. Jan. 11, 2006) (same).[8]

## II. "Acting Under"

As to the first requirement of the removal statute, "the private person's 'acting under'

must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior."

*Watson v. Philip Morris Co.*, 551 U.S. 142, 152 (2007).  Put differently, "[a] defendant acts

under a federal officer where his or her actions that led to the lawsuit were based on a federal

'officer's direct orders or comprehensive and detailed regulations.'"  *Hagen*, 739 F. Supp. 2d at

784 (quoting *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)).[9]

It follows that contractors "that are subject to government specifications have been found to have

worked at the direction of a federal officer."  *Totten v. Crane Co.*, Civil No. 13-C-8157, 2014

WL 1689689, at *4 (N.D. Ill. Apr. 28, 2014).  Usually, then, "any defendant who satisfies the

colorable defense requirement will necessarily meet the acting under requirement of Section

1442(a)(1) as well."  *Hagen*, 739 F. Supp. 2d at 785 (discussing failure-to-warn claims).  The

---

[8] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

[9] By contrast, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'"  *Watson v. Philip Morris Co.*, 551 U.S. 142, 152 (2007).  Wayne and Lofton allege compliance not with general regulations but with particular government purchase orders subject to particular specifications.

same is true here.  Because Wayne and Lofton have sufficiently alleged that they supplied materials pursuant to specifications, they have sufficiently alleged that they "acted under" a federal officer.

## III. Causal Nexus

To establish a causal nexus between conduct performed under federal direction and the plaintiff's claims, "a defendant seeking removal must 'by direct averment exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his federal duty.'"  *Id.* at 785 (alteration in original) (quoting *Mesa*, 489 U.S. at 132).  Again, "[t]he causal connection requirement 'is ordinarily satisfied whenever the removing defendant is able to establish a colorable government contractor defense."  *Citrano*, 1 F. Supp. 3d at 469 (internal quotation marks and citation omitted).  So, too, here.  Wayne and Lofton allege that they supplied under federal direction asbestos paneling that Smith, in turn, believes caused his disease.

*     *     *

Accordingly, Wayne and Lofton have alleged facts sufficient to satisfy each of the requirements of 28 U.S.C. § 1442(a)(1), such that this court has jurisdiction over the case.

## CONCLUSION

For the reasons stated above, the court will deny Smith's motion to remand.

A separate order follows.


July 2, 2015_____                                    _____/s/_____
Date                                                              Catherine C. Blake
                                                                      United States District Judge

11